## JANE E. MARSHALL v. LYDIA G. REED.

The parties having a dispute about the true dividing line of their adjoining lands, mutually agree by their written and sealed indenture, by them subscribed, to abide by such a line as should be established by one Spalding and such competent engineer as he might select to aid him, under the special mutual covenant of one to the other to forfeit $50 in case of failure to perform the formal covenants therein contained. In an action of debt brought to recover the stipulated penalty of $50, *held* that under the pleadings and circumstances disclosed, this action could not be maintained, as it did not appear that the defendant had in any way revoked the submission, nor did it appear but that the award, made and published in the premises, was not now conclusive and binding upon both parties.

DEBT upon written agreement.

The declaration is annexed marked A., and the agreement and return of the referees thereon is annexed marked B. To this declaration there was a general demurrer and joinder in demurrer; and the questions of law thus raised are hereby reserved.

### A.

In a plea of debt for that said Reed on the seventh day of April, A. D., 1866, at said Nashua, by a certain indenture of that date made by and between said Reed and said Jane E. Marshall, and sealed with their seals, and here in court to be produced, did covenant and agree with the said Jane E. Marshall to consent to and abide by such a line between said Reed and said Jane E. Marshall, as Hosea B. Spalding, of Merrimack, in the county of Hillsborough, and such competent civil engineer as he may select, may establish in consideration that said Jane E. Marshall shall pay the expense of running said line; and said Jane E. Marshall did in said indenture covenant and agree with the said Reed, that, in consideration of the above mentioned premises, the said Jane E. Marshall would abide by such line as may be established by said Spalding and such competent person as he might select, and pay the expense of the same; and the said Reed and said Jane E. Marshall, each in said indenture thereby covenanted and agreed with the other to forfeit the sum of fifty dollars in case of a default in the performance of the covenants and agreements of said indenture to be paid to the party complying with and performing her covenants and agreements aforesaid.

And the plaintiff avers that said Spalding took upon himself the duties of awarding and adjudging in the premises as aforesaid, and in pursuance thereof selected James P. S. Otterson, of Nashua, aforesaid, as such competent civil engineer, who accepted said appointment, and thereafterwards said Spalding and Otterson, as aforesaid, on the 20th day of April, A. D., 1866, at said Nashua, made their award in writing to said Reed and Jane E. Marshall, touching said premises, and that said line should be established as follows, to wit: Beginning at the "Old Dix Corner," so called, at the bound agreed upon by the said parties, thence running northerly in a straight line to a stone bound at the road leading from Nashua to Hollis. That the said plaintiff has paid all of the expense of running said line, and has ever abided and now abides by the line as established by said Spalding and Otterson, and has per-

formed and complied with all of her said covenants and agreements, but the said Reed has ever since said 20th day of April, 1866, refused to consent and abide by said line as established by said Spalding and Otterson as aforesaid, and now so refuses.

Whereby and by reason of all which an action hath accrued to said plaintiff to demand and recover of said defendant the said sum of fifty dollars, yet though often requested, the said defendant has never paid the same, to the damage of the said plaintiff (as she says) the sum of one hundred dollars.

B.

This indenture made this 7th day of April, A. D., 1866, between Lydia Reed, of Nashua, in the county of Hillsborough, and State of New Hampshire, of the first part, and Mrs. Jane E. Marshall, of said Nashua, of the second part, witnesseth that the said Lydia Reed does hereby covenant and agree with the said Jane E. Marshall to consent to and abide by such a line between herself and said Marshall, as Hosea B. Spalding, of Merrimack, in said county, and such competent civil engineer as he may select, may establish, in consideration that said Marshall shall pay the expense of running said line ; and said Marshall hereby covenants and agrees with said Reed, that, in consideration of the above mentioned premises, she will abide by such line as may be established by said Spalding and such competent person as he may select, and to pay the expense of the same ; and the said Reed and Marshall each hereby covenants and agrees with the other to forfeit the sum of $50, in case of a default in the performance of the covenants and agreements of this instrument to be paid to the party complying with and performing her covenants and agreements as aforesaid.

In witness whereof we have hereunto set our hands and seals, this 7th of April, 1866.

LYDIA G. REED.          [Seal.]
JANE E. MARSHALL.   [Seal.]

WITNESSES.

II. B. SPALDING,    } to
J. P. S. OTTERSON, } L. G. R.
K. F. WORCESTER,  } to
WM. BARRETT,         } J. E. M.

I, Hosea B. Spalding, within named, on oath, depose and say, that agreeably to the within agreement, and at the request of the parties within named, I selected James P. S. Otterson, of said Nashua, and with said Otterson, on the 16th day of April, A. D., 1866, ran out and established the following as the line between said Reed and said Marshall, to be observed by said Reed and Marshall agreeably to the within written instrument, as beginning at the "Old Dix Corner," so called, at a bound agreed upon by the said parties, thence running northerly in a straight line to a stone bound at the road leading from Nashua to Hollis.

H. B. SPALDING.

I, James P. S. Otterson, above named, on oath, depose and say, that I assisted Hosea B. Spalding, above named, in establishing a boundary line between said Reed and Marshall, and that the line above described is the one established by us.

J. P. S. OTTERSON.

---

State of New Hampshire.

HILLSBOROUGH, SS.                                      April 20, 1866.

Personally appeared the above named Hosea B. Spalding and James P. S. Otterson, and made oath that the above affidavits by them subscribed are true.

Before me,              WM. BARRETT, Justice of Peace.

{ 5 cent stamp,
{    H. B. S.

{ 5 cent stamp,
{    J. P. S. O.

*A. W. Sawyer,* for defendant.

I. Parties whose lands join may agree upon a dividing line between them by parol, and establish monuments, and this will bind them until they make a subsequent agreement. *Clough* v. *Bowman,* 15 N. H. 504.

A parol agreement between owners of adjoining lands, that the line between them shall be ascertained and settled by a surveyor, is, when executed, conclusive upon them and all claiming under them. *Gray* v. *Berry,* 9 N. H. 473; *Prescott* v. *Hawkins,* 12 N. H. 27; *Sawyer* v. *Fellows,* 6 N. H. 107; *Orr* v. *Hadley,* 36 N. H. 575.

In this case the parties, under their hands and seals, covenant and agree to abide by such a line as may be established by Spalding, &c.

Spalding and Otterson, in pursuance of the covenant and agreement, established the line, and made the bounds. It is an executed agreement, and requires the assent of both parties to undo it.

Suppose this had been an agreement to give a deed of a piece of land or forfeit $50, and a deed had been given, and after it were executed and delivered, defendant says, "I will not abide by it," could defendant recall the deed? Nor can he recall this executed agreement; it is too late, the bounds are established, the line fixed, everything is completed,

The forfeiture in the agreement, if it. means anything, is a covenant not to revoke before the referees complete their work. ·

Here there was no forfeiture of the $50, because the agreement to refer and the reference were never revoked.

II.   The form of action is misconceived.   It should have been covenant not debt.   *Stickney* v. *Stickney,* 21 N. H.  61 ; 2 Saunders R. 62, n. 5 ; 428 Oliver's Precedents.

III.   Here was no demand before action commenced.   An actual demand to pay the $50 before action brought must be stated in the declaration.   Kid on Awards 191.

IV.   The agreement to submit must be stamped.   *Celling* v. *Gray,* 37 Vt. 136 ; 1 Saunder's Pl. and Ev. 673.

*W. W. Bailey,* for plaintiff.

I.   The agreement is, that defendant will consent to, and abide by, such a line, &c.   By the demurrer, the defendant admits she does not consent to, or abide by, such a line, &c., which constitutes a breach, and renders the defendant liable to the amount of the forfeiture.   The agreement has nothing to do with the agreement to refer, or of reference.

As a precautionary quieting proceeding, not deemed superfluous by those acquainted with this defendant, the parties had a right to enter into such an agreement, for the purpose of putting an end to all further controversy in regard to the line, if possible.   The first position in defendant's brief is not pertinent to the case.   Even upon the defendant's view of the case a refusal to consent to, and abide by, such a line, &c., would amount to a revocation of the agreement to refer and of reference.

II.   The form of action is proper.   1 Selwyn's Nisi Prius 553 ; *Stearns* v. *Barrett,* 1 Pick. 449.

III.   A demand would not be necessary, even if the action was upon an award.   *Fairbanks* v. *Dow,* 6 N. H. 264.

IV.   The agreement is stamped.   By mistake the copy used by consent of parties upon the transfer of the case, did not indicate the stamp. But even if not stamped the question cannot arise on demurrer.   Plaintiff's attorney subsequently referred the court to *Quimby* v. *Melvin,* 35 N. H. 198 ; *Sleeper* v. *Pickering,* 17 N. H.  461 ; also commented on the case, *Shaw* v. *Hatch,* 6 N. H. 162.

NESMITH, J.   This was debt founded upon a written and sealed instrument, which is specially declared on by plaintiff.   The main or leading object of the contract was doubtless to procure the final adjustment or establishment of a disputed line between the adjoining lands of the

respective parties, through the aid and intervention of an arbitrator agreed upon by them. It appears that said parties mutually covenanted and agreed to consent to, and abide by, such line as the arbitrator, aided by such competent engineer as he might select, should ultimately, upon a full examination, find as the true dividing line between their lands which was then in dispute. Also, that, in consideration that the plaintiff should pay the expense of running said line, the parties further mutually agreed, the one with the other, to forfeit and pay the sum of fifty dollars in case of a default in the performance of the covenants and agreements of the indenture, to be paid to the party complying with and performing her covenants contained in said instrument as aforesaid. An award in the premises is duly found by the arbitrator with the aid of his engineer. The plaintiff, on her part, alleges a compliance with said award, and a full performance of all the covenants binding upon her.

The plaintiff further alleges that ever since the 20th day of April, 1866, being the day when said award was made and published to the parties, the said defendant has refused to consent to and abide by said line as found and established by said Spalding and his engineer, Otterson, and still refuses, whereby an action has accrued to plaintiff to demand and recover of the defendant the sum of fifty dollars. It will be seen that the breach assigned by plaintiff is in very indefinite and general terms. No specific act of the defendant is set forth, as having been done by her in violation of the line awarded by the arbitrator, nor do we ever find any distinct declaration of the defendant, anywhere made, tending to show her refusal to abide by the line as found and established in the case. No positive averment is made by plaintiff indicating any particular wrong committed by the defendant. Everything of this kind is left open to inference or conjecture. The question arises, then, whether the intent and meaning of the parties to this contract may not be limited and measured by the construction of similar language, as used and found in common arbitration bonds.

In *Shaw* v. *Hatch*, 6 N. H. 162, it was settled that the stipulation in the condition of an arbitration bond, that the parties shall abide by and perform the award of the arbitrators, means only that they shall *await* the award of the arbitrators without revoking the submission, and not that they shall acquiesce in the award when made. Chief Justice Richardson remarks in that case, that the agreement to abide by and perform the award, means simply to await the award, without revoking the submission, and never can be construed to mean that the defendant should not be at liberty to dispute the validity of any award when made. He quotes the case, *Marsh* v. *Bulteel*, 5 Barn. & Ald. 507, where C. J. Abbott says, "that the defendant by countermanding the authority of the arbitrators had broken the covenant to abide by the award."

The cases *Quimby* v. *Melvin*, 35 N. H. 198, and *Sleeper* v. *Pickering*, 17 N. H. 461, do not settle the precise point here at issue, but tend to illustrate the doctrine, that the language employed in arbitration bonds, "to *abide by the award*," is to prevent the revocation or breaking up of the contract of the submission, rather than to apply to the

actual finding of the arbitrators. The latter case shows, also, that liquidated damages may be recovered, where there is a wrongful attempt to revoke the submission. In *Blaisdell* v. *Blaisdell*, 14 N. H. 78, which was an action of debt on an arbitration bond, containing a penalty, it was settled that the plaintiff is not entitled to recover the penalty, but only so much as is due in equity and good conscience. In the case before us, it appears to us that the proper meaning of the words as used by the parties in their indenture, viz., "to consent to and abide by such a line as the arbitrator should establish for them," is the same in legal effect as if the language of the parties had been "to abide by, and perform the award of the arbitrator." The obligation implied from the use of either form of expression would be the same; as the intent of the parties, if fulfilled, would be in either case to find the true dividing line between their adjacent lands, and have it settled permanently. As a consequence arising out of the aforesaid positions, we do not find, under the demurrer of the defendant, that the breach of the contract of the parties is legally set forth, and therefore this action in its present form cannot be maintained. We do not find the penalty to be designed by the parties for the purpose as claimed by plaintiff. The award made in the premises, though not made here the subject of our special examination, will, of course, stand as conclusive upon the parties until impeached for good cause. Under the frequent decisions in this State, it is competent for the parties who have a dispute about the true dividing line of their lands, to settle the same by and through the award of a surveyor or other arbitrators, and their award will not be disturbed without the consent of both parties, and except for good cause shown. *Orr* v. *Hadley*, 36 N. H. 575, and cases cited.